Eastern District of Kentucky
FILED
OCT 0 5 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-538-GWU

DANNY HATFIELD,              PLAINTIFF,

VS.          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

        Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Hatfield

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Danny Hatfield, was found by an Administrative Law Judge (ALJ) to have "severe" impairment consisting of a history of disc bulging at L3-L4 and L4-L5 but no evidence of nerve root impingement, decreased hearing, a depressive disorder, and mild mental retardation. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Hatfield retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, history of attending school through ninth grade (resulting in only a second grade reading level), and history of semiskilled and skilled coal mine employment could perform any jobs if he had no exertional limitations, but did have the following non-exertional restrictions. (Tr. 358). He: (1) could have no exposure

to loud noise without hearing protection; (2) would have no useful ability to understand, remember, or carry out complex instructions or deal with the public; (3) would have a "seriously limited but not precluded" ability to understand, remember, and carry out detailed instructions and relate predictably in social situations; and (4) would have no more than a "limited but satisfactory" ability in all other areas of occupational, performance, or personal-social adjustment. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 359).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Hatfield alleged disability due to back and leg pain (Tr. 77) which had caused him to finally stop working as a roof bolter in February, 2002, after which he was laid off by his employer (Tr. 333-4). He admitted that he had been released for work by his treating neurosurgeon with no restrictions, however (Tr. 336, 338), and on appeal, does not make any argument concerning the ALJ's hypothetical physical limitations.

On the other hand, the plaintiff's does make several arguments on appeal regarding the assessment of his mental condition. His two specific contentions are (1) that he meets the Commissioner's Listing of Impairment (LOI) Section 12.05C for

Hatfield

mild mental retardation; and (2) that he meets LOI Section 12.04A and B for affective disorders.[1]

---

[1] LOI 12.04 is captioned "Affective Disorders," and defines the condition as follows: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractability; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;
or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or

9

Concerning the 12.05C argument, the plaintiff points to psychological examinations by Psychologists B. Wayne Lanthorn and Gary Maryman in 2002 and 2003, both of which showed valid full-scale IQ scores of below 70. Clearly, the claimant meets the portion of this listing which requires a valid IQ score of 70 or below and a physical or other mental impairment imposing an additional and significant work-related limitation of function. It is more questionable, however, whether he meets the requirements of the introductory paragraph of 12.05C, which defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning <u>initially manifested during the developmental period</u>; i.e., the evidence demonstrates or supports onset of the impairment before age 22" (emphasis added). As the Sixth Circuit held in <u>Foster v. Halter</u>, 279 F.3d 348 (6th Cir. 2001), "recent amendments to the regulations further clarify that a claimant will meet the Listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . . .'" <u>Id.</u> at 354, <u>quoting</u> 20 C.F.R.

---

2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

Pt. 404, Subpt. P, App. 1, Section 12.00A, as amended by 65 Fed. Reg. 50746, 50776 (August. 21, 2000)(emphasis and brackets in original).

In support of his claim, Mr. Hatfield points to school records which include an IQ score of 68 obtained in the sixth grade, as well as generally undistinguished grades (Tr. 105-6), although not the "straight Fs" which he described to Dr. Lanthorn (Tr. 263) and Dr. Maryman (Tr. 294). While this is some evidence of subaverage intellectual functioning prior to age 22, the records also contain a fifth grade IQ score of 80 (Tr. 105), and, perhaps more significantly, the testimony of the VE was that the jobs performed by Mr. Hatfield in over 20 years of coal mining included work as a roof bolter and scoop operator that are classified as semi-skilled, and work as a continuous mining machine operator which is classified as a skilled occupation. (Tr. 356). The specific vocational preparation (SVP) number for continuous mining machine operator was 5, and for roof bolter and scoop operator it was 4. (Tr. 357). The "general learning ability" for these positions was 3, which the VE testified was the middle third of the population. (Id.). Therefore, there is substantial evidence to support the ALJ's determination that the plaintiff did not meet all the criteria of LOI 12.05C.

Regarding LOI 12.04, the plaintiff primarily relies on the report of Dr. Lanthorn, which included diagnoses of mild mental retardation, a pain disorder associated with both psychological factors and a general medical condition, and a Global Assessment of Functioning score of 40 to 45, reflecting major to serious impairment.

11

Hatfield

(Tr. 267). Dr. Lanthorn prepared a mental residual functional capacity form indicating that Mr. Hatfield had poor or no ability to make any occupational adjustment and very little ability to make performance or personal-social adjustments. (Tr. 269-71). He also opined that the plaintiff was totally and permanently disabled from all work. (Tr. 292). However, this report was offset by another one-time examiner, Dr. Maryman, who diagnosed only a depressive disorder and mild mental retardation, with a GAF of 58, reflecting moderate symptoms, and who also filled out a functional capacity assessment (Tr. 298-300) which was accepted by the ALJ and given in the hypothetical question to the VE, supra. Dr. Maryman's restrictions were clearly inconsistent with the "B" criteria of LOI 12.04. Likewise, while Dr. John Marshall, apparently a psychiatrist associated with the office of the plaintiff's treating neurosurgeon, Dr. Burt, did prescribe Zoloft for what he described as "permanent psychosocial factors affecting recovery," (Tr. 248) he did not indicate at any point that the plaintiff would have the serious limitations in his ability to maintain activities of daily living and maintain social functioning, or limitations in concentration, persistence, and pace required to meet the "B" criteria of LOI 12.04. Finally, the plaintiff's own testimony at the administrative hearing was that his daily activities included some chores such as checking mail and taking out the garbage, visiting his father's houseboat, going to church twice a week, and

Hatfield

shopping from a grocery list that his wife prepared for him. (Tr. 341-5). Accordingly this argument is also without merit.

The decision will be affirmed.

This the _____5_____ day of October, 2005.

_____
G. WIX UNTHANK
SENIOR JUDGE